In the District Court of the United States
For The District of South Carolina
BEAUFORT DIVISION

2005 JUN 28 P 2 13

| | |
|---|---|
| Alfred "Antonyo" Phelps, #265588 ) | |
| ) | Civil Action No. 9:04-22406-TLW-GCK |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF THE MAGISTRATE JUDGE** |
| Officer Stanley Terry; Officer Lindley; ) | |
| Officer Campbell; CPL Rice; and ) | |
| Jon Ozmint, SCDC Commissioner ) | |
| ) | |
| Defendants. ) | |
| ) | |

## I. INTRODUCTION

The Plaintiff, Alfred "Antonyo" Phelps ("Phelps"), is a state prisoner who was incarcerated within the South Carolina Department of Corrections ("SCDC") and housed in the Special Management Unit ("SMU") at McCormick Correctional Institute ("MCCI") at the time of the alleged incidents giving rise to this action. Proceeding *pro se*, he seeks relief under 42 U.S.C. § 1983, alleging violations of excessive and unnecessary force in violation of his rights guaranteed by the Eighth Amendment, and violations of the South Carolina Tort Claims Act, S.C. Ann. §15-78-10 et. seq., due to the actions of the above-named Defendants.[1]

---

[1]  Defendants Stanley Terry [26-1], Lindley [24-1], and Campbell [22-1] are corrections officers at MCCI and were assigned to the SMU unit at the time of the incident alleged in Phelps' Complaint. Defendant Rice is a Corporal at MCCI and was assigned to the SMU unit at the time of the incident alleged in Phelps' Complaint. [23-1]. Defendant Jon Ozmint is the Director of SCDC and was not present at MCCI or the SMU at the time of the incident alleged in Phelps' Complaint. [21-1].

Page 1 of 18

Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review pretrial matters in prisoner cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

## II. THE *PRO SE* COMPLAINT

Phelps commenced this case as a *pro se* litigant, and therefore his pleadings are accorded liberal construction, as *pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 9 (1980) (*per curiam*). Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Publ L. No. 104-132, 110 Stat. 1214 (the "AEDPA"). This review has been conducted in light of the following precedents: Denton v. Hernandez, 504 U.S. 25 (1992); Neitzke v. Williams, 490 U.S. 319, 324-25 (1989); Haines v. Kerner, 404 U.S. 519 (1972); Nasim v. Warden, Maryland House of Correction, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983).

The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or "conjure

up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).

### III. *IN FORMA PAUPERIS* PROCEEDING

Phelps filed this action *in forma pauperis* pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without paying the administrative costs before proceeding with the lawsuit.[2]  To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case "at any time if the court determines that . . . the action . . . is "frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §§ 1915(e)(2)(B)(i)–(iii) (2004).  A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. 25, 31 (1992).  The court may dismiss a claim as "factually frivolous" under Section 1915(e) if the facts alleged are clearly baseless. Denton v. Hernandez, supra. In making this determination, the court is not bound to accept without question the truth of the plaintiff's allegations, but rather need only weigh the plaintiff's factual allegations in her favor. Id.

Hence, under Section 1915(e)(2)(B), a lawsuit based on a meritless legal theory may be dismissed *sua sponte*. Neitzke v. Williams, 490 U.S. 319 (1989). "Both the authority to accept and to dismiss such [*in forma pauperis*] complaints thus arise from a single statute. The most logical basis for the dismissal of a Section 1915(a) complaint, then, is the authority granted by

---

[2] See Phelps' IFP application, filed on September 30, 2004. [3-1]  On October 8, 2004, the undersigned United States Magistrate Judge granted Plaintiff leave to proceed without prepayment of costs and fees. [4-1]

Section 1915(d)." Cochran v. Morris, 73 F.3d 1310, 1315 (4th Cir.1996) (*en banc*).

## IV. FACTUAL BACKGROUND

At the time of the alleged incident, Phelps was incarcerated in the SMU unit at MCCI. On July 13, 2004, during a routine cell check, Officer Lindley ("Off. Lindey") noticed that Phelps' clipboard was missing from the wall.[3] Upon questioning Phelps about the location of the clipboard, Off. Lindley informed Sergeant Richard Gilchrist ("Sgt. Gilchrist") of the situation. At this point, Sgt. Gilchrist instructed Officers Lindley, Terry, Campbell, and Corporal Rice ("Cpl. Rice") to search the Phelps' cell for the missing clipboard and any other contraband.[4]

When the officers arrived at Phelps' cell, they noticed a magazine page obstructing the overhead light in the cell. This is considered a safety hazard for both inmates and corrections officers as it makes the interior of the cell dark and otherwise hard to see.[5] Cpl. Rice ordered Phelps to remove the paper from the light cover, and, after several requests, Phelps complied. After the paper was removed, Phelps was handcuffed behind his back through the flap on his cell door.[6] Two officers entered the cell to perform the search, while another officer guarded the entrance to prevent Phelps from escaping. Officer Stanley Terry ("Off. Terry") was assigned to



---

[3] Each inmate is assigned his own clipboard which contains an evaluation sheet and cell log. The clipboard hangs on the wall outside the inmate's cell.

[4] Richard Gilchrist is a Lieutenant at MCCI and was a Sergeant assigned to the SMU at the time of the incidents alleged in the Plaintiff's Complaint. Although Sgt. Gilchrist gave the order for the search of Plaintiff's cell, he was not present during the time the search was conducted, and thus, is not a named Defendant in this case. See Aff. Richard Gilchrist ("Aff. Gilchrist") [25-1] at ¶¶ 3, 17.

[5] See Aff. Dwayne Campbell ("Aff. Campbell") [22-1] at ¶¶ 11-13; Aff. Geoffrey Rice ("Aff. Rice") [23-1] at ¶¶ 12-14; Aff. James Lindley ("Aff. Lindley") [24-1] at ¶¶ 17-19; Aff. Stanley Terry ("Aff. Terry") [26-1] at ¶¶ 12-14.

[6] See Aff. Rice at ¶¶ 19-22.

watch Phelps while the search was conducted.[7]  During the search, Phelps attempted to "step through" his handcuffs so that he would be handcuffed in front as opposed to being handcuffed behind his back.  This is considered a security threat to corrections officers as it allows an inmate to use both his hands and the handcuffs themselves as a weapon.[8]  Off. Terry, with the help of Off. Lindley and Cpl. Rice, placed Phelps face down on the ground to control the situation.[9]  After subduing Phelps, the officers continued their search and found the missing clipboard.  As a result of his actions, Phelps was charged and later convicted of "Evading a Security Device."[10]

It is undisputable that Phelps suffered some form of dental injury on July 13, 2004.[11]  However, the facts are questionable as to how the injury occurred.  Phelps alleges that he was never handcuffed prior to the officers entering his cell.[12]  He further alleges that his injuries were the result of being punched in the mouth by Off. Terry while removing the magazine paper from the light cover.[13]  Denying Phelps' allegations, the officers contend that no excessive force was used, and that Phelps was neither struck nor kicked at any time during the search.[14]

---



[7]     See Aff. Terry at ¶¶ 24, 32.

[8]     See Aff. Campbell at ¶¶ 23-27; Aff. Rice at ¶¶ 25-29; Aff. Lindley at ¶¶ 30-34; Aff. Terry at ¶¶ 25-29.

[9]     See Aff. Campbell at ¶ 31; Aff. Rice at ¶ 33; Aff. Lindley at ¶ 38; Aff. Terry at ¶ 33.

[10]    See Aff. Campbell at ¶¶ 40-41; Aff. Rice at ¶¶ 41-42; Aff. Lindley at ¶¶ 46-47; Aff. Terry at ¶¶ 41-42.

[11]    See Aff. Gilchrist at ¶ 20 ("The Plaintiff informed me that his mouth was bleeding and he needed to be seen by medical.")

[12]    See Phelps' Compl. [1-1] at p. 3 ("Defendants . . . came to my door, opened it without putting on my handcuffs, and told me I was being shaked [sic] down.").

[13]    Id. ("Officer Stanley Terry used a 'closed fist' and punched me in my mouth very hard.").

[14]    See Aff. Campbell at ¶¶ 42-43; Aff. Rice at ¶¶ 43, 45; Aff. Lindley at ¶¶ 48-49; Aff. Terry at ¶¶ 45-46.

Phelps' teeth were knocked loose during the incident. On July 14, 2004, he was seen by Dr. Alcye Hawes ("Dr. Hawes"), an on-site dentist at MCCI.[15] Phelps refused to allow Dr. Hawes to conduct an x-ray, thus preventing her from moving forward with any type of medical procedure.[16] A review of the Phelps' dental records reveals that he suffered a fractured mandible prior to the incident which would contribute to the loosening of the teeth in question.[17] Further, he has a history of periodontal disease[18] and gingivitis[19] which would cause his teeth to become loose as the bone supporting them is gradually decayed. Finally, Phelps had poorly fitted crowns on at least one of the teeth in question which would cause a loosening of the teeth.[20]

## V. PROCEDURAL HISTORY

On September 30, 2004,[21] Phelps, proceeding *pro se* and *in forma pauperis*, sued the five above-named defendants ("Defendants") in both their individual and official capacities claiming that the officers' use of excessive force violated his constitutional rights under the Eighth Amendment. Phelps seeks to have Off. Terry removed from the SMU unit at MCCI, in addition to $100,000 in compensatory damages against Off. Terry and the SCDC and $100,000 in punitive damages against the above-named Defendants.

---

[15] See Aff. Dr. Alcye Hawes ("Aff. Dr. Hawes") [28-1] at ¶¶ 2, 5.

[16] Id. at ¶ 7.

[17] Id. at ¶¶ 12-13.

[18] Id. at ¶¶ 19, 23.

[19] Id. at ¶¶ 24-25.

[20] Id. at ¶¶ 28, 30.

[21] See Plaintiff's Compl. [1-1].

The Defendants, through their counsel, answered Phelps' Complaint on November 23, 2004, requesting dismissal of the action, and any other relief that may be granted by the Court. [11-1] Thereafter, on February 14, 2005, the Defendants filed a Motion for Summary Judgment and a supporting Memorandum ("Defendants' Motion for Summary Judgment"). [18-1; 19-1]

The undersigned issued an Order on February 15, 2005, under Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), notifying Phelps that the Motion had been filed, that he was required to respond within thirty-four (34) days and that, upon his failure to respond, this Court might grant the relief requested. [27-1] Phelps filed a response to Defendants' Motion for Summary Judgment on March 4, 2005. [32-1] One day prior, the Defendants filed a Reply to Plaintiff's Response. [30-1] On March 21, 2005, Phelps filed a Reply to Defendants' Reply to Plaintiff's Response. [34-1]

## VI. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT



The Defendants have moved for summary judgment. Their Motion is governed by the holding in Celotex Corporation v. Catrett, 477 U.S. 317 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Id. at 323; Fed. R. Civ. P. 56(c).

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. Felty v. Graves-Humphreys Co., 818 F. 2d 1126 (4th Cir.

1987). Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. Stone v. University of Md. Medical Sys. Corp., 855 F. 2d 167 (4th Cir. 1988).

## VII. ANALYSIS

### A. Introduction

Phelps has brought this action alleging that the Defendants violated his constitutional rights by using excessive force against him. The Defendants argue that they are entitled to summary judgment because: (1) Phelps failed to allege jurisdiction in his complaint;[22] (2) the Complaint fails to state a claim upon which relief can be granted as to Defendant Ozmint; (3) the matters asserted by Phelps do not fall within the scope of 42 U.S.C. § 1983; (4) Defendants are entitled to qualified immunity; (5) Defendants are entitled to Eleventh Amendment immunity in their official capacities; (6) the action against Defendants should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity they are not "persons" under 42 U.S.C. § 1983; (7) under §15-78-100(b) of the South Carolina Tort Claims Act, this Court does not have subject matter jurisdiction over any claims under State law; (8) any claims against the Defendants under State law should be dismissed as a matter of law; (9) Defendant Ozmint cannot be held liable in a supervisory capacity; and (10) Phelps' Complaint lacks an arguable basis in law and should be dismissed as frivolous pursuant to the Prison Litigation Reform Act.

---

[22] This Court construes *pro se* complaints liberally, and thus, it appears the Plaintiff has brought this action pursuant to 42 U.S.C. § 1983.

### B. Defendant Jon Ozmint

Counsel for the Defendants argues that Phelps' Complaint as to Defendant Jon Ozmint ("Ozmint") should be dismissed for failure to state a claim upon which relief can be granted. Rule 8(a) states in part: "A pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Further, plaintiffs are "required to make a short plain statement that will give the defendant fair notice of the claim and the grounds upon which it rests." S.C. Elec. & Gas Co. v. Westinghouse Elec. Corp., 826 F. Supp. 1549, 1553 (D.S.C. 1993) (citing Conley v. Gibson, 355 U.S. 41 (1957)). Phelps' Complaint simply states that "Jon Ozmint is in charge of the correction officers' training."[23] The Complaint contains no other allegations of any kind against Ozmint. This statement concerning Ozmint's position does not amount to a claim against him upon which relief can be granted. Even viewing the Phelps' *pro se* Complaint liberally, as the Court must do here, the statement concerning Ozmint is not sufficient to put him on notice of the claims against him. Thus, it is recommended that Defendant Ozmint be dismissed from this action.

### C. Defendants Did Not Violate Phelps' Eighth Amendment Rights

Phelps alleges that the Defendants used excessive and unnecessary force against him by hitting him in the mouth while he was complying with their orders. An analysis of whether an individual's Eighth Amendment right has been violated has a subjective and objective component. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). To succeed on any Eighth

---

[23] See Plaintiff's Compl. [1-1] at second unnumbered page after p. 4.

amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." Id. Both prongs of this test must be satisfied in order to establish a violation of the constitutional right to be free from cruel and unusual punishment.

An injury need not be significant to be found in violation of the Eighth Amendment, but something more than a *de minimis* injury is required. Hudson v. McMillian, 503 U.S. 1 (1992). A *de minimis* injury is evidence of *de minimis* force, and thus, an excessive force claim should not lie where a prisoner's injury is *de minimis*. Norman v. Taylor, 25 F.3d 1259, 1262-63 (4th Cir. 1994), *cert. denied*, 513 U.S. 1114 (1995). With only *de minimis* physical injury, a prisoner may only recover if the challenged conduct resulted "in an impermissible infliction of pain" or was otherwise "of a sort repugnant to the conscience of mankind." Id. at 1263 n. 4.

Phelps fails to show that his injuries were any more then *de minimis*. Phelps alleges that his injuries were sustained when Officer Terry "used a 'closed fist' and hit [him] in the mouth very hard."[24] However, according to the Officers' Affidavits, Phelps attempted to step through his handcuffs during a search of his cell and his actions prompted the officers to use force and restrain him on the ground.[25] Phelps' medical records indicate that he was examined by medical

---

[24] See Plaintiff's Compl. [1-1] at p. 3.

[25] See Aff. Campbell at ¶¶ 23-27; Aff. Rice at ¶¶ 25-29; Aff. Lindley at ¶¶ 30-34; Aff. Terry at ¶¶ 25-29.

Page 10 of 18

personnel on the date of the alleged incident.[26]  Additionally, he was seen by an in-house dentist the following afternoon[27] before ultimately being sent to an outside dentist for further treatment.[28] Recently, this Court held that a corrections officer who hit an inmate across the back with a baton before handcuffing the inmate and dragging him by the chain constituted *de minimis* force. Hendricks v. Galloway, 2004 WL 3090229 (D.S.C. Feb. 2, 2004) (Norton, J.).  Hendricks also set out a number of other examples of *de minimis* force that are constitutionally permissible when prison security and order, or the safety of other inmates or officers, have been placed in jeopardy. See Norman v. Taylor, 25 F.3d at 1262-64 (keys swung at inmate's face which struck his thumb was *de minimis* force); Gavin v. Ammons, 21 F.3d 430, 1994 WL 117983 (7th Cir. April 6, 1994) [Table] (guard's pulling of inmate's hair was *de minimis* force); Calabria v. Dubois, 23 F.3d 394, 1994 WL 209938 (1st Cir. May 24, 1994) [Table] (radio belt thrown at face of inmate causing blood to appear was *de minimis* force); White v. Holmes, 21 F.3d 277, 280-81 (8th Cir. 1994) (keys swung at inmate which slashed his ear was *de minimis* force); Jackson v. Pitcher, 966 F.2d 1452, 1992 WL 133041 (6th Cir. June 16, 1992) [Table] (guard's stomp on the hand of inmate was *de minimis* force), *cert. denied*, 506 U.S. 1024, 113 S. Ct. 665, 121 L.Ed.2d 590 (1992); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985) (corrections officer's pushing a cubicle wall so as to strike plaintiff's legs, brusque order to inmate and poking inmate in the back was *de minimis* force); *see also* Roberts v. Samardvich, 909 F. Supp. 594 (N.D. Ind.

---

[26]   See Aff. Brenda Dash-Frazier [20-1], Attachments ("Phelps' Medical Summary") at p. 11, entry for July 13, 2004.

[27]   Id., entry for July 14, 2004.

[28]   Id., entry for July 15, 2004.

1995) (grabbing inmate, pushing him up the stairs towards his cell, and placing him in cell cuffed, shackled, and secured to the door was *de minimis* force under the circumstances); McMiller v. Wolf, 1995 WL 529620 (W.D.N.Y. August 28, 1995) (snatching inmate's mirror, breaking it against cell bars and thereby lacerating inmate's finger was *de minimis* force); Crow v. Leach, 1995 WL 456357 (N.D. Cal. July 28, 1995) (corrections officer's pushing inmate into chair causing his shoulder to break window behind him was *de minimis* force); Jackson v. Hurley, 1993 WL 515688 (N.D. Cal. Nov. 23, 1993) (blow to back of neck with forearm and kick to the ankle of inmate were *de minimis* force); DeArmas v. Jaycox, 1993 WL 37501 (S.D.N.Y. Feb. 8, 1993), *aff'd*, 14 F.3d 591 (2d Cir. 1993) (corrections officer's punching inmate in arm and kicking inmate in leg was *de minimis* force); Olson v. Coleman, 804 F. Supp. 148, 150 (D. Kan. 1993) (single blow to head of handcuffed inmate was *de minimis* force); Candelaria v. Couglin, 787 F. Supp. 368, 374-75 (S.D.N.Y. 1992) (fist pushed against neck of inmate causing him to lose his breath was *de minimis* force), *aff'd*, 979 F.2d 845 (2d Cir. 1992); Neal v. Miller, 778 F. Supp. 378, 384 (W.D. Mich. 1991) (backhand blow with fist to the groin of inmate was *de minimis* force); Ramos v. Hicks, 1988 WL 80176 (S.D.N.Y. July 25, 1988) ("bent wrist comealong hold" or single punch not unreasonable or excessive where inmate ignored repeated order, became agitated, and attempted to damage state property); Anderson v. Sullivan, 702 F. Supp. 424, 426 (S.D.N.Y. 1988) (corrections officer's pulling inmate's arms behind back, lifting them up and forcing inmate's face into cell bars was *de minimis* force).

Phelps' injuries were *de minimis*. Thus, he has not met the objective component of his

excessive force case and has not shown that the Defendants violated his constitutional rights under the Eighth Amendment.

Even assuming Phelps could show that he meets the objective component, he fails to show he meets the subjective component of the Eighth Amendment analysis. In cases where an inmate claims that a prison official used excessive force against him, in order to meet the threshold subjective requirement, the prisoner must show that the use of such excessive force was intended as punishment. Whitley v. Albers, 475 U.S. 312 (1986). Where force is used in the course of a prison disturbance, the question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21.



In this case, the officers used force against Phelps only after he attempted to step through his handcuffs. As discussed above, Phelps fails to show more than *de minimis* injuries from the alleged incident. Further, Phelps' actions posed an immediate security threat to the officers, hence justifying the use of force against him. Ultimately, Phelps has failed to show that the officers acted maliciously or sadistically towards him, and thus he fails to establish an Eighth Amendment claim. Accordingly, it is recommended that the Defendants' Motion for Summary Judgment be granted.

### D. Defendants are Entitled to Eleventh Amendment Immunity

With respect to Phelps' claim against the Defendants as officers of a state entity, his claim is without merit. It is well-settled that the State enjoys immunity from suit in this Court under the

Eleventh Amendment to the United States Constitution. The pleadings clearly show that the Defendants were SCDC employees and were acting in their official capacities as agents of the State of South Carolina. Phelps has no cause of action against the Defendants in their official capacity. See Will v. Michigan Department of State Police, 491 U.S. 58 (1989).

### E. Defendants are not "Persons" under Section 1983

The Defendants correctly argue that they are entitled to an order of summary judgment because they were acting in the course of their official employment and thus are immune from suit. To the extent that the Defendants are sued in their official capacity, they are not "persons" against whom liability can be asserted under 42 U.S.C. § 1983. Harter v. Vernon, 101 F.3d 334 (4th Cir. 1996), cert. denied, 521 U.S. 1120 (1997).

### F. Plaintiff's Claim under the South Carolina Tort Claims Act

To the extent Phelps seeks to bring a claim under the South Carolina Tort Claims Act, it is recommended that this Court decline to exercise jurisdiction over the remaining state claim, and dismiss the state claim.



### RECOMMENDATION

The conclusion is inescapable that Phelps' Complaint fails to raise any genuine issues of material fact. Accordingly, for the aforementioned reasons, it is recommended that the Defendants' Motion for Summary Judgment [18-1] be **granted**, and that the state law claim be **dismissed**. See 28 U.S.C. §1915(e)(2)(B).

Although the Defendants would enjoy qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800 (1982), this issue need not be reached given the lack of merit to the claim as a whole. The Complaint therefore should also be dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii).

Ultimately, this is a clearly frivolous action under 28 U.S.C. § 1915(e)(2)(B)(i). Accordingly, this action should be **deemed a "strike"** for purposes of the "three strike rule" of the Prison Litigation Reform Act. 28 U.S.C. § 1915(g) and 42 U.S.C. § 1997e.

June 28, 2005
Charleston, South Carolina

George C. Kosko
United States Magistrate Judge

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"

## AND The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** See Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.) 1984, *cert.*

*denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir. 1985)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. *** This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. *** We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. *** A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections

Page 17 of 18

are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

> **Larry W. Propes, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**