IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Alfred "Antonyo" Phelps, #265588, ) | C.A. No. 9:04-22406-TLW-GCK | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| -versus- ) | ORDER | |
| ) | | |
| Officer Stanley Terry; Officer Lindley; ) | | |
| Officer Campbell; CPL Rice; and ) | | |
| Jon Ozmint, SCDC Commissioner, ) | | |
| ) | | |
| Defendants. ) | | |
| _____) | | |

This matter is now before the undersigned for review of the Report and Recommendation ("the Report") filed by United States Magistrate George C. Kosko, to whom this case had previously been assigned pursuant to 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2) (D.S.C.). In his Report, Magistrate Judge Kosko recommends that the defendants' motion for summary judgment be granted and that the state law claim be dismissed. Magistrate Judge Kosko also recommends that the Complaint be dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii) as this is a frivolous action under 28 U.S.C. § 1915(e)(2)(B)(I). Accordingly, the Magistrate Judge further recommends that the above-captioned case be deemed a "strike" for purposes of the "three strikes" rule of 28 U.S.C. § 1915(g). The plaintiff has filed objections to the Report.

In conducting this review, the Court applies the following standard:

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections. . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a de novo determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a de novo or any other standard, the factual

1

or legal conclusions of the magistrate judge as to those portions of the Report and Recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

Wallace v. Housing Auth. of the City of Columbia, 791 F.Supp. 137, 138 (D.S.C. 1992) (citations omitted).

In light of this standard, the Court has reviewed, de novo, the Report and the objections thereto. The Court accepts the Report. As a result of the serious allegations made by plaintiff in his complaint, the Court has carefully reviewed the file in this case, including the extensive medical records. After review and careful consideration, this Court cannot conclude that plaintiff's allegations, although serious, establish that plaintiff suffered more than *de minimis* injury.

The Court notes that the plaintiff's medical records establish and support the facts set forth in the affidavit of Dr. Alyce Hawes, dentist assigned to McCormick Correctional Institution. Dr. Hawes saw plaintiff on July 14, 2004, following the alleged incident in question. At that time, plaintiff refused to allow an x-ray to be taken, but it was noted that certain teeth were loose. Plaintiff was sent to an outside oral surgeon, at his request, and it appears that the recommendation and action was to retain the teeth with an arch bar. Plaintiff's medical records do establish that he had prior dental issues. The plaintiff's records show that he had noted periodontal disease and poor oral hygiene as early as 2000, gingivitis as early as 2001, and bone loss around certain teeth due to poor fitting crowns as early as 2001. Additionally, the records also establish that plaintiff had a prior fractured mandible in this same area in 2002. However, following the alleged altercation in this case, plaintiff was examined by medical personnel. An x-ray of his jaw showed that the mandible

appeared to be intact with no evidence of acute fracture.[1] The plaintiff does not dispute the medical opinions offered by Dr. Hawes in her affidavit that a prior fracture to a certain area would require teeth in this area to be more loose due to bone loss, that with periodontal disease bone is eaten away over time with the result being that teeth become loose, that gingivitis causes teeth to loosen, and that poorly fitting crowns can cause soft tissue deterioration and bone loss which can lead to the loosening of the teeth in that area. Plaintiff also does not dispute the doctor's opinion that given his history of prior trauma to the affected area, periodontal disease, gingivitis and poorly fitting crowns (on at least one of the teeth in question) that it may take only a minor bump to loosen plaintiff's teeth.

In addition to reviewing plaintiff's medical records the Court has also read, analyzed, and considered the cases of <u>Stanley v. Hejirika</u>, 134 F.3d 629 (4th Cir. 1998), as well as <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992) in light of the facts of this case. In <u>Stanley</u>, there was a rebellion by inmates after a correctional officer refused an inmate request for recreation. The inmates began setting fires by dropping burning papers outside their cells, set off the sprinkler systems and stopped up their toilets in order to flood the tier, and threw objects from their cells. Stanley was one of the seven inmates identified as primary troublemakers of the disturbance. He was removed from his cell, the cell was searched, personal belongings were removed and he was returned to his cell. Stanley's extraction proceeded without physical incident, but he was uncooperative and verbally expressed anger toward the officers. According to the officers, when Stanley continued to encourage inmates to set fires and began "forcefully hitting" his cell door, the shift commander, ordered that

---

[1] See Medical Record of Plaintiff Alfred Phelps for Mandible Exam, referred by Sally Blake, and interpreted by Steve Glassman, M.D. (hereinafter "Mandible Exam Record").

Stanley be removed from his cell a second time and be placed in an isolation cell. During his removal an altercation occurred, and force was used by the officers.

The Stanley Court noted that to prove a claim that prison officials violated his constitutional rights through the excessive use of force, an inmate must satisfy two requirements. First, he must satisfy a subjective requirement that the force used by the corrections officers inflicted unnecessary and wanton pain and suffering. In the context of a prison disturbance, this question ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. In addition to satisfying the subjective requirement, the inmate must also satisfy an objective requirement; he must show that correctional officers' actions, taken contextually, were objectively harmful enough to offend contemporary standards of decency. In determining whether the objective component is satisfied, the factfinder must evaluate the force applied and the seriousness of the resulting injury against the need for the use of force and the context in which that need arose.

The Fourth Circuit found that the officers used significant physical force in subduing Stanley, but also found that they had objectively reasonable grounds to believe that such force was necessary. They were quelling a disturbance and seeking to retain control of the prison and not punishing an inmate for verbal abuse. The Court also found that bruises, swelling, and a loosened tooth sustained in a fracas that occurred while prison guards were trying to quell a disturbance were not constitutionally significant.

Th Court in Stanley distinguished the facts of that case from those in Hudson. The injuries sustained by Hudson were bruises, swelling, loosened teeth, and a cracked dental plate which was

rendered unusable for several months. In Hudson, however, not only were the injuries more severe, but they were inflicted in a context totally different from that presented in this case. The Supreme Court noted that after Hudson and a prison guard had argued, the guard placed Hudson in handcuffs and shackles, took the prisoner out of his cell, and walked him toward the penitentiary's "administrative lockdown" area. Hudson testified that, on the way there, the guard punched Hudson in the mouth, eyes, chest, and stomach while another guard held the inmate in place and kicked and punched him from behind. He further testified that the supervisor on duty watched the beating but merely told the officers "not to have too much fun." Prior to this beating, there was no evidence that the guard had been threatened with any physical injury. Indeed, while the state took the position that the guard's actions were not only unauthorized but also isolated, the Court noted that the two guards who punished Hudson also "beat another prisoner shortly after they finished with Hudson." In the context of a verbal argument, the Supreme Court found that blows deliberately directed to the inmate to punish him, causing bruises, swelling, loosened teeth, and a cracked dental plate, were sufficient to support an excessive force claim in violation of the Eighth Amendment. Hudson indicates that when a prisoner is held and calmly beaten by two guards in response to a verbal argument, the *de minimis* level is more easily reached.

After a careful review of this case, viewing the facts in the light most favorable to the plaintiff as the non-moving party,[2] the Court finds this case to be closer to Stanley than Hudson. The

---

[2] For purposes of this summary judgment motion, the Court will construe the facts as alleged in plaintiff's complaint as true. Plaintiff alleges that he was not in handcuffs, but was complying with the directive to remove the paper he had covering the light in his cell, when an officer used a closed fist to punch him in the mouth. The Court has assumed these facts to be true in its disposition of the motion for summary judgment. However, the Court does find it necessary to note that plaintiff does not dispute that he was charged with and found guilty of the disciplinary charge of evading a security device for stepping through his handcuffs. Additionally,

5

officers in this case were searching plaintiff's cell due to the fact that plaintiff's clipboard, which hangs outside his cell and contains an evaluation and cell log, was missing.[3] When the officers arrived at plaintiff's cell, there was a magazine page obstructing the overhead light in the cell, which is undisputedly considered a safety hazard for both inmates and corrections officers as it makes the interior of the cell dark and otherwise hard to see. Accordingly, this Court finds that the context here allows the use of some force to maintain or restore discipline in the face of security concerns. A show of force is allowable to restore or maintain discipline--to retrieve the missing cell log and restore proper lighting conditions in plaintiff's cell. There is no evidence presented of any immediate prior altercations or personal disagreements between plaintiff and any of the officers. A review of the medical records and Dr. Hawes' affidavit lead to the conclusion that, while addressing a security concern, there is insufficient evidence on which to conclude that excessive force was applied in a clear malicious and sadistic manner for the sole purpose of causing harm. Accordingly this Court is not sufficiently persuaded that plaintiff has satisfied the subjective requirement for an excessive force claim.

Even assuming the plaintiff could satisfy the subjective requirement, with regards to the objective requirement, the Fourth Circuit has explicitly held that absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*. Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994)(indicating that "Hudson does not suggest, much less hold, that the extent of injury is irrelevant to whether excessive force has been

---

the Court notes that the plaintiff acknowledges that he has done nothing to appeal the decision on the evading a security device charge.

[3] It appears that plaintiff does not dispute that the clipboard was found during the shakedown of his cell.

employed and therefore that an excessive force claim cannot be defeated by evidence that the plaintiff's injury was *de minimis*"). This Court concludes that the injuries in this case were not as serious as those in Hudson, and are *de minimis*. When coupled with the context, and plaintiff's medical history, this Court cannot conclude that more than *de minimis* force was used, or that any resulting injury was more than *de minimis*. Again, this Court notes and finds of great import that an examination of plaintiff's jaw following the alleged altercation shows that "[t]he mandible itself appears to be intact with no evidence of acute fracture."[4] The medical reports do not indicate the plaintiff suffered a fractured jaw in this case. The Report reiterates that there is "no evidence of fracture."[5] Based on all of the evidence in the record, and after a thorough review of all pleadings and submitted medical records, as well as the controlling Fourth Circuit and Supreme Court case law, the Court accepts the Report's recommendation that plaintiff has failed to show that (1) the officers acted maliciously or sadistically towards him, and (2) that his injuries were any more than *de minimus*.

**THEREFORE, IT IS HEREBY ORDERED** that the Magistrate Judge's Report is **ACCEPTED** (Doc. # 36); plaintiff's objections are **OVERRULED** (Doc. # 37); and defendants' motion for summary judgment is **GRANTED** and the state law claim is **DISMISSED**. However, this Court chooses not to deem this case a "strike" pursuant to 28 U.S.C. § 1915(g).

**IT IS SO ORDERED.**     s/ Terry L. Wooten
August 26, 2005     **TERRY L. WOOTEN**
Florence, South Carolina     **UNITED STATES DISTRICT JUDGE**

---

[4] See Mandible Exam Record.

[5] See Id.